**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| Peregrine Financial Group, Inc. | ) | |
| | ) | Case No. 12 B 27488 |
| Debtor. | ) | |
| ————————————————— | ) | |
| | ) | Judge Carol A. Doyle |
| Robert Miller, Fargo 500 LLC and | ) | |
| Gainesville Coins, Inc., on behalf of | ) | |
| themselves and on behalf of all persons and | ) | |
| entities similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 14 A 00837 |
| | ) | |
| Ira Bodenstein, not individually but | ) | |
| solely as the duly appointed Chapter 7 | ) | |
| trustee of the estate of Peregrine Financial | ) | |
| Group, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiffs in this adversary proceeding are former customers of Peregrine Financial

Group, Inc. who traded foreign currencies ("forex") and over-the-counter metals ("OTC metals").

They allege claims against Ira Bodenstein, the chapter 7 trustee of Peregrine, based on the

prepetition theft of millions of dollars from Peregrine committed by its founder and former CEO

- Russell Wasendorf, Sr. The complaint alleges four claims: breach of fiduciary duty, common

law fraud, unjust enrichment, and conversion. The plaintiffs seek damages in the amounts

attributed to their forex and OTC metals trading accounts, as well as punitive damages,

attorneys' fees, and the imposition of a constructive trust.  They also seek to represent a class of

Peregrine's forex and OTC metals customers.

The trustee moved to dismiss the complaint under Rules 12(b)(6) and 9(b) of the Federal

Rules of Civil Procedure.   He contends that:  (1) this adversary proceeding is really a time-

barred proof of claim against the Peregrine bankruptcy estate; (2) the fraud and embezzlement

committed by Wasendorf cannot be imputed to the debtor; and (3) the claims are barred by

collateral estoppel and law of the case.  The court agrees that the plaintiffs are asserting claims

against the bankruptcy estate that are time-barred under the bar date order, so they must be

dismissed.  The court therefore need not address the other arguments raised in the trustee's

motion.


## I.     Jurisdiction

This adversary proceeding is within the court's core bankruptcy jurisdiction under 28

U.S.C. § 157(b)(2)(B), and the court has the authority to enter a final judgment.  The plaintiffs

seek allowance of claims against the bankruptcy estate based on their prepetition contracts with

Peregrine and the prepetition actions of Peregrine's former CEO.  As discussed below, the causes

of action alleged in the complaint fall squarely within the definition of a "claim" in 11 U.S.C. §

101(5) and should have been alleged in timely proofs of claim filed in the bankruptcy case, not in

an adversary proceeding.  The court has both the jurisdiction and authority to adjudicate claims

against the bankruptcy estate.  *See, e.g., In re Woods*, 517 B.R. 106, 114 (Bankr. N.D. Ill. 2014)

(a prepetition claim against the debtor becomes a claim against the bankruptcy estate on which a

bankruptcy court has the authority to enter final judgment); *In re Schmid*, 494 B.R. 737, 744

(Bankr. W.D. Wis.) *appeal dismissed sub nom. Schmid v. Bank of Am., N.A.*, 498 B.R. 221 (W.D.

Wis. 2013), *appeal dismissed* (Jan. 23, 2014) ("There is no question that the allowance of a

creditor's proof of claim is a core matter under 28 U.S.C. § 157(b)(2)(B) that this Court may hear

and finally determine.")  The court may therefore enter a final judgment in this adversary

proceeding.


## II.      Standard on Motion to dismiss

The trustee seeks dismissal of the complaint primarily under Rule 12(b)(6) of the Federal

Rules of Civil Procedure, which applies to adversary proceedings through Rule 7012 of the

Federal Rules of Bankruptcy Procedure.  Fed. R. Bankr. P. 7012.  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.,* at 556."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The court takes

all well-pleaded allegations of the complaint as true and views them in the light most favorable to

the plaintiff.  *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

In ruling on a motion to dismiss under Rule 12(b)(6), a court usually considers only the

facts alleged in the complaint.  The court may also "take judicial notice of matters of public

record" without converting a motion based on Rule 12(b)(6) into a motion for summary

judgment.  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).  Although courts

generally do not grant motions to dismiss based on affirmative defenses because a complaint

"need not contain *any* information about defenses and may not be dismissed for that omission,"

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (emphasis in

original), a plaintiff may plead himself out of court by admitting all the elements of an

impenetrable defense. *Id. See also, Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d

930, 942 (7th Cir. 2012) (affirming the district court's dismissal of claims barred by a statute of

limitations).


## III.   Complaint and Background

The complaint alleges that prior to July 10, 2012, the petition date in this case, the

plaintiffs and proposed class members opened accounts with Peregrine to trade forex and OTC

metals.  Complaint, ¶ 11.  On July 8, 2012, the Commodity Futures Trading Commission notified

Wasendorf that Peregrine's bank accounts were going to be electronically monitored.  Complaint,

¶ 19.  The next day, Wasendorf attempted suicide.  Prior to this attempt, he drafted and signed a

statement in which he admitted embezzling millions of dollars from Peregrine over a period of

20 years by using falsified bank statements, intercepting balance confirmation forms from

regulators, forging a bank officer's signature, and intentionally misreporting information to

regulators.  Complaint, ¶ 20.   Wasendorf was arrested on July 13, 2012 and charged with

numerous crimes, including lying to federal regulators and defrauding customers out of $100

million.  Wasendorf's suicide attempt, confession and arrest were widely reported in the news

media.  *See e.g.,* Exhibit B to Trustee's Reply.  Wasendorf entered into a plea agreement in

September 2012, and he was sentenced in January 2013 to 50 years in prison and ordered to pay

4

more than $215 million in restitution.   Complaint, ¶ 22.

In September 2012, this court entered an order in the Peregrine bankruptcy case setting November 16, 2012 as the last day for customers and general creditors to file proofs of claim against Peregrine.  Peregrine Docket no. 200.  In November 2012, the court entered an order extending the bar date to December 14, 2012.  Peregrine Docket no. 281.  Each plaintiff filed an individual proof of claim before the bar date.  Exhibits 3, 4 and 5 to Trustee's Motion.  The plaintiffs filed proofs of claim only on behalf of themselves, not on behalf of a putative class. Each proof of claim was submitted on a forex customer claim form that identified basic information about the account, stated an account balance, and contained a copy of an account statement as an attachment.  The proof of claim form contained the question:  "Do you assert any claims against PFG based on your forex account at PFG that are not reflected in your account balance ...?"  Each plaintiff responded "no" to this question.  The plaintiffs filed this adversary proceeding on December 16, 2014.

**IV.    Plaintiffs' Claims and the Bar Date**

The trustee argues that the complaint must be dismissed because it is a poorly disguised attempt to bring new claims against the Peregrine bankruptcy estate long after the claims bar date passed.  The court agrees.

**A.    Claims Allowance Process in Chapter 7**

The plaintiffs allege that Peregrine is liable to them for breach of fiduciary duty (Count I), common law fraud (Count II), unjust enrichment (Count III), and conversion (Count IV), all

based on Wasendorf's theft of millions of dollars from Peregrine's bank accounts. They seek

compensatory damages, punitive damages, attorneys' fees, and the imposition of a constructive

trust. All four claims are based on the plaintiffs' rights under the Peregrine customer agreement

and the prepetition criminal acts committed by Wasendorf. Each claim fits within the definition

of a "claim" in the Bankruptcy Code.

A "claim" is defined in § 101(5) as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives
rise to a right to payment, whether or not such right to an equitable remedy is
reduced to judgment, fixed, contingent, matured, unmatured, disputed,
undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Thus, a "claim" includes not only a right to payment but also a right to an

equitable remedy that gives rise to a right to payment. *See In re Chateaugay Corp.,* 944 F.2d

997, 1008 (2d Cir.1991).

In each claim, the plaintiffs assert a right to payment from the Peregrine bankruptcy estate

based on the amounts attributed to their forex and OTC metals accounts. Their requests for

compensatory and punitive damages fall within § 101(5)(A) because they direct assert a right to

payment. Their request for equitable relief in the form of a constructive trust also gives rise to a

request for payment of the amounts attributed to their accounts, so it fits squarely within §

101(5)(B). Thus, all four counts of the complaint assert "claims" against the Peregrine estate

under § 101(5).

The Bankruptcy Code creates a clearly-defined process for a creditor holding a "claim" to

6

seek payment from a chapter 7 bankruptcy estate.  Section 501(a) provides that a creditor "may

file a proof of claim."  11 U.S.C. § 501(a).   Section 502(a) provides that a proof of claim filed

under § 501 "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).

Grounds for objecting to proofs of claim are provided in § 502(b).  11 U.S,C, § 502(b).  Thus, a

proof of claim filed by a creditor to which no party in interest objects is "allowed," i.e., treated as

valid, and will be paid in accordance with the priority scheme for chapter 7 cases.  If an objection

to a proof of claim is filed, the court resolves the objection as a contested matter governed by

Rule 9014 of the Federal Rules of Bankruptcy Procedure.  Fed. R. Bankr. P. 9014.  The court

adjudicates the validity of the claim through written briefs and, if necessary, an evidentiary

hearing to resolve any factual issues, after which the claim is allowed or disallowed.  *See, e.g., In*

*re Greenig*, 152 F.3d 631, 633 (7th Cir. 1998).  Section 726 of the Bankruptcy Code, 11 U.S.C. §

726, establishes the priority of payment for allowed claims in a chapter 7 case, except that §§

761-767 of the Code contain special provisions for distributions in commodity broker

liquidations that also apply in this case.  11 U.S.C. §761-767.

The Federal Rules of Bankruptcy Procedure govern the time for filing proofs of claim.

Rule 3002(c) sets the deadline for filing proofs of claim in cases under chapters 7, 12 and 13 at

90 days after the first date set for the meeting of creditors called under 11 U.S.C. § 341(a).  Fed.

R. Bankr. P. 3002(c).  The time for creditors to file proofs of claim in a chapter 7 case cannot be

extended after the bar date except in very limited circumstances.  Rule 9006(b) governs

extensions of time limits specified in the rules.  Rule 9006(b)(1) provides generally that time

periods can be extended after they have expired if the failure to comply with the time limit was

the result of excusable neglect.  Rule 9006(b)(3) states, however, that the time provided under

7

specified rules, including Rule 3002(c), can be extended "only to the extent and under the
conditions stated in those rules." Fed. R. Bankr. P. 9006(b)(3).   Rule 3002(c) provides a  list of
six specific circumstances in which the chapter 7 bar date can be extended, none of which applies
to the plaintiffs.  The excusable neglect standard in Rule 9006(b)(1), therefore, does not apply to
proofs of claim in a chapter 7 case, and the chapter 7 bar date cannot be extended except in the
six circumstances set forth in Rule 3002(c).[1]  *See In re Greenig*, 152 F.3d at 634-35;  *In re MF
Global, Inc.*, 2012 WL 763170 (Bankr. S.D.N.Y. 2012) (the excusable neglect standard does not
apply to a chapter 7 claims bar date in a commodity broker liquidation, even when the bar date is
set by court order).   If a creditor fails to file a proof of claim before the bar date, and no
exception in Rule 3002(c) applies, " the claim is statutorily barred."  *In re Greenig*, 152 F.3d at
633.

Thus, the proper way for a creditor to seek payment from a chapter 7 bankruptcy estate is
to file a proof of claim on or before the claims bar date, not an adversary proceeding.  *See, e.g.,
Browner v. Rosen*, 56 B.R. 214, 216 (D. Mass 1985) (the sole remedy for asserting an affirmative
right to monies owed by a bankrupt's estate, based on prepetition debt, is to file proofs of
claim."); *O.P.M. Leasing Services, Inc. v. Weissman*, 35 B.R. 854 (Bankr. S.D.N.Y. 1983), *rev'd
on other grounds, Hassett v. Weissman (In re O.P.M. Leasing Services, Inc.)*, 48 B.R. 824
(S.D.N.Y. 1985).  The validity of a claim is adjudicated through a claim objection, which is a
contested matter governed by Rule 9014.  An adversary proceeding is not the proper procedural

---

[1]Section 726(a) also contains some exceptions that allow payment of late-filed claims in
specified circumstances, none of which apply here.  *See In re Greenig*, 152 F.3d at 633-34.
Section 726 does permit the payment of untimely claims in chapter 7 but only after all timely
claims are paid in full.  11 U.S.C. § 726(a)(3).

8

vehicle for asserting or adjudicating the validity of a claim against a bankruptcy estate.[2]   To

assert the claims in the complaint against Peregrine, the plaintiffs should have filed proofs of

claim by the bar date alleging the facts supporting the claims and identifying the nature of the

claims, not an adversary proceeding two years after the bar date.  Although the plaintiffs did file

timely proofs of claim, they failed to assert the claims alleged in the complaint in those proofs of

claim.

The plaintiffs do not dispute that the claims asserted in the complaint are "claims" for

purposes of § 101(5) that should have been asserted in their timely proofs of claim.   Instead, they

argue that their adversary proceeding "is tantamount to an amended proof of claim."  They

contend that amendment should be permitted because of "newly discovered facts" supporting

their claims that were not "publicly available" until after the claims bar date, the "equities" favor

amendment, the law regarding constructive trusts in this circuit changed after the bar date, and

the new claims should relate back to the date of filing of their original proofs of claim because

they satisfy the "nexus test" of Rule 15.  None of these arguments is persuasive.

### B.      Amendment of Claims

The plaintiffs contend that Rule 15(a) of the Federal Rules of Civil Procedure regarding

the amendment of pleadings applies to their proofs of claim and allows amendment liberally.

Under Rule 15(a)(2), a party "may amend its pleading only with the opposing party's written

---

[2]Courts will sometimes treat an adversary proceeding filed by a creditor against a debtor before the claims bar date as an informal proof of claim if the creditor failed to file a timely proof of claim.   The creditor must then file a formal proof claim that may relate back to the filing of the complaint.   The claim will then be adjudicated through the ordinary claims allowance process described above, not as an adversary proceeding.

consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(c) then provides the standard for amendments to relate back to the filing of the original pleading. Rule 15 does not directly apply to proofs of claim in a bankruptcy case. Rule 7015 of the Federal Rules of Bankruptcy Procedure provides that Rule 15 of the Federal Rules of Civil Procedure applies in adversary proceedings. It does not provide that Rule 15 applies to amendments to proofs of claim. Rule 9014 of the Federal Rules of Bankruptcy Procedure provides that certain specified rules in the 7000 series, which apply to adversary proceedings, also apply to contested matters. Rule 7015, however, is not included in that list. The Bankruptcy Rules, therefore, do not expressly apply Rule 15 to amendments to proofs of claim. Many courts have nonetheless applied the standards in Rule 15, directly or by analogy, to amendments to proofs of claim filed after the bar date. *See Maxwell v. Novell, Inc. (In re marchFirst, Inc.)*, 431 B.R. 436, 443 (Bankr. N.D. Ill. 2010).

The Seventh Circuit has analyzed amendments of proofs of claim after the bar date under Rule 15 in a number of cases. *See In re Plunkett*, 82 F.3d 738, 741 (7th Cir. 1996)*; In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992); *In re Unroe*, 937 F.2d 346, 349 (1991). More recently, however, the court discussed the Rule 15(c) standard but concluded that an amendment made after the bar date and after confirmation of a chapter 11 plan should be rejected as untimely even though it met the standard for relating back under Rule 15(c). *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993). Thus, while the standard in Rule 15(c) is generally applied to amendments to proofs of claim filed after the bar date, courts need not necessarily permit the amendment to relate back even if the standard in Rule 15(c) is met. The Seventh Circuit has also held that the lenient standard for amendment in Rule 15(a), upon which the plaintiffs rely, does not apply to

proofs of claim after the bar date.    Noting that "the 'freely allowed' language of Rule 15(a) plays

no role after the bar date," the court explained that amendments are "rarely" permitted once the

bar date for filing claims has passed.    *In re Plunkett*, 82 F.3d 738, 741 (7th Cir. 1996).


### 1.    Relation Back

In this case, the claims alleged in the complaint are untimely and therefore barred unless

they relate back to the dates on which the plaintiffs filed their proofs of claim.    Even though the

plaintiffs should not have filed an adversary proceeding to assert amendments to their proofs of

claim, the court will treat the complaint as an attempt to amend the proofs of claim.    The

complaint, however, alleges entirely new claims that were not asserted in any way in their proofs

of claim.    The amendments, therefore, do not relate back to the filing of their original proofs of

claim and are barred as untimely.

Under Rule 15(c), an amendment relates back to the original pleading when "the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out - or attempted to be set out - in the original pleading."    Fed. R. Civ. P. 15(c).    To assert a

claim at all, a proof of claim must be sufficiently specific to give adequate notice of the

existence, nature and amount of the claim.    *See, e.g., Maxwell v. Novell*, 431 B.R. at 442-43;

*Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.), 94 F.3d 772, 777 (2nd Cir.*

*1996); Gens v. Resolution Trust Corp.,* 112 F.3d 569, 575 (1st Cir. 1997).    The creditor must

provide facts with sufficient particularity to put the parties on notice of the claim.    *See, e.g., In re*

*Rimsat, Ltd.,* 223 B.R. 345, 348 (Bankr. N.D. Ind. 1998); *In re Grocerland Coop., Inc.,* 32 B.R.

427, 437 (Bankr. N.D. Ill. 1983).    Rule 15(c) then permits relation back if the facts alleged in the

amendment remain essentially the same and have "been brought to [the] defendant's attention

by" the original complaint. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001); *see also*

*Maxwell v. Novell*, 431 B.R. at 443.  Put another way, an amended claim relates back only if it is

"sufficiently linked" to the original.  "A sufficient link exists when the amended claim asserts a

new claim on the basis of the same core of facts" alleged in the original claim.  *In re marchFirst,*

*Inc.*, 448 B.R. 499, 507 (Bankr. N.D. Ill. 2011).  A late amendment to a proof of claim will be

allowed only if, among other things, it is not "a veiled attempt to assert a distinctly new right to

payment" but one to which the original claim "fairly alerted" the parties.  *Maxwell v. Novell*, 431

B.R. at 431, citing *Gens*, 112 F.3d at 757 (internal quotations omitted); *see also In re Alliance*

*Operating Corp.*, 60 F.3d 1174 1176 (5th Cir. 1995) (a "key factor" was that the court "already

have notice" of the "nature" of the claim); *Unioil, Inc. v. Elledge (In re Unioil, Inc.)*, 962 F.2d

988, 992 (10th Cir. 1992); *In re Hibble*, 371 B.R. 730, 737 (Bankr. E.D. Pa. 2007); *In re Kilgor*

*Meadowbrook Country Club, Inc.*, 315 B.R. 412, 421-22 (Bankr. E.D. Tex. 2004).

      Each plaintiff filed a timely proof of claim on a form provided by the trustee entitled

"Forex Customer Claim Form."  The form instructs customers to use this claim form if they are a

forex customer and have a claim against Peregrine "based on a forex account."  It further

instructs that "[s]eparate claims forms must be filed for other types of claims, including for

claims related to a futures account or a precious metals account with PFG."  Part I of the form is

entitled "Account Balance at PFG," and it instructs the customer to state the account balance

with PFG for the forex account based on the latest statement provided by PFG.  Each plaintiff

provided a number asserting an account balance on the appropriate line in Part I.

      Part II of the form is entitled "Assertion of Additional Claims."  It asks, "Do you assert

any claims against PFG based on your forex account at PFG that are not reflected in your account balance specified in No. I above?"  Boxes for checking "yes" and "no" are provided.   Under the "yes" box, the form states, "If yes, please (a) include a signed attachment identifying all bases for any such claims, and (b) attach all evidence in support of any such claims."  Each plaintiff checked the "no" box and provided no additional information about any other claim.  Thus, each plaintiff  asserted only a claim seeking the balance in his trading account as of the petition date, which was necessarily based on his customer agreement with Peregrine.  No facts supporting any other claim were alleged.  In fact, each plaintiff expressly disavowed having any other claim beyond the contract claim by checking the "no" box for other claims in Part II and failing to provide any factual basis for any other claim.  Each plaintiff also failed to file any other proof of claim asserting the facts or even the legal theory of the claims alleged in the complaint.

Plaintiffs nonetheless argue that the claims in the complaint were fairly alleged in the original proofs of claim because all of the claims seek a return of funds in their forex and OTC metals accounts.  They fail to point, however, to any facts supporting claims for breach of fiduciary duty, fraud, unjust enrichment, or conversion in their proofs of claim.  That plaintiffs seek the amounts attributed to their accounts in both their original proofs of claim and their new claims does not establish the requisite nexus for relating back.  They must show that they gave notice of the factual basis for and the nature of the new claims in their timely proofs of claim, not merely that they previously sought a part of the damages they now seek.  The plaintiffs cannot satisfy this test because they alleged no facts at all in the timely proofs of claim.

13

### 2.    Equitable Considerations

The plaintiffs also argue that the "equities" favor allowing their amendments to relate

back to the date of filing of their proofs of claim.  The Seventh Circuit generally permits courts to

consider equitable factors in determining whether an amendment to a proof of claim after the bar

date relates back, but the analysis varies depending on the chapter of the case.   In chapter 11

cases, in which the excusable neglect standard applies to extensions of the bar date, the Seventh

Circuit has applied the excusable neglect standard by analogy in weighing the equities, even

though that standard technically applies under Rule 9006(b)(1) to an extension of a time limit,

not to relation back.  *See, e.g., In re Plunkett*, 82 F.3d 738 (7th Cir. 1996) (rejecting the "laundry

list" approach to equitable considerations for relation back and applying the excusable neglect

standard in Rule 9006(b)(2) instead in a chapter 11 case); *see also In re J.S. II, L.L.C.*, 389 B.R.

563, 568 (Bankr. .N.D. Ill. 2008) (applying excusable neglect standard for the equitable "prong"

of relation back test in a chapter 11 case).  This is presumably because a creditor could be paid as

though it had filed a timely proof of claim in a chapter 11 whether the time for filing a claim is

extended under the excusable neglect standard in Rule 9006(b)(1) or a late-filed amendment is

deemed to relate back to a timely proof of claim.  All of the cases cited by the plaintiffs regarding

consideration of equitable factors are chapter 11 cases in which the excusable neglect standard

applies.  *See In re Stavriotis*, 977 F.2d at 1205-06;  *Xechem Intl, Inc.*, 424 B.R. 836 (Bankr. N.D.

Ill. 2010);  *In re J.S. II, L.L.C.*, 389 B.R. 563, 566-67 (Bankr. N.D. Ill. 2008); *In re Lehman Fin.*

*Group, LLC*, 2006 WL 2640210 (Bankr. N.D. Ill. 2006).  These cases are not directly relevant to

the analysis in a chapter 7 case.

In chapters 7, 12, and 13, in which the claims bar date cannot be extended and the

14

excusable neglect standard does not apply, the Seventh Circuit has nonetheless permitted courts

to consider equitable factors in determining whether an amended claim relates back.  In *In re*

*Unroe*, 937 F.2d at 349-50, the court affirmed the bankruptcy court's exercise of discretion to

allow an amended claim to relate back based on equitable considerations in a chapter 13 case.[3]

While the court suggested that the bankruptcy court would have been justified in rejecting the

late-filed amendment, it affirmed the court's decision to permit the late-filed amendment to relate

back under an abuse of discretion standard.  937 F.2d at 350-51.  The IRS had filed a timely

claim seeking unpaid taxes owed for one year, and then filed an amended claim after the bar date

for unpaid taxes owed for the next tax year as well.  The Court of Appeals rejected the

bankruptcy court's determination that there was a sufficient nexus between the claims for the two

tax years to satisfy the standard for relation back in Rule 15(c).  937 F.2d at 349.   It nevertheless

affirmed the bankruptcy court's ruling based on equitable considerations, invoking § 105 of the

Bankruptcy Code.  The court reasoned the debtor had anticipated the amendment and specifically

provided in the plan to pay the IRS a higher amount than it later sought in both claims combined.

937 F.3d at 350.  The court also considered that the debtor's other creditors were not unfairly

surprised because she had scheduled the claims at an amount greater than the IRS ultimately

sought.  The court recognized that the claim for the second tax year was not an "entirely new

claim," even though it did not pass the test for relation back.  The court stated that it would leave

for another case the question of "whether a judge in equity could permit an entirely new claim

filed out of time."  937 F.2d at 350.

---

[3]Rule 3002(c) governs the bar date in cases under chapters 7, 12 and 13, so the bar date
can only be extended in the six circumstances specified in that rule in all three chapters, and the
excusable neglect standard does not apply.

The Seventh Circuit later answered this question with an emphatic "no" in *In re Greenig*, 152 F.3d at 635. It affirmed a district court's reversal of a bankruptcy court that had allowed a late-filed claim of a creditor in a situation somewhat similar to *Unroe*. The debtor's chapter 12 plan expressly provided for payment of the creditor and was confirmed before the bar date. The creditor then failed to file a timely proof of claim, but tried to file one a year after the bar date. After quoting the *Unroe* court's reservation of the question whether a "judge in equity could permit an entirely new claim filed out of time," the court stated, "We answer that question today: a bankruptcy judge is not vested with such equitable power." *Id.* The *Greenig* court explained that a bankruptcy court "cannot use its equitable power to circumvent the law," noting that "the fact that a [bankruptcy] proceeding is equitable does not give the judge free-floating discretion to redistribute rights in accordance with his [or her] personal view of justice and fairness." *Id.* (internal citations omitted). *See also In re Plunkett*, 82 F.3d at 741 ("[W]e concluded in *Unroe* that justice does not *require* amendment, and indeed rarely *permits* amendment, once the last date for filing claims has passed."); *In re Stavriotis*, 977 F.2d 1202 ("bankruptcy courts are not required to permit late amendments which are primarily used as a back-door route to secure bar-date extensions.") Thus, the Seventh Circuit held that a bankruptcy court cannot rely on equitable considerations to ignore a claims bar date when no timely claim was filed. It also has strongly suggested that equitable factors should not be the sole basis for allowing relation back in a case under chapters 7, 12 or 13, in which the claims bar date cannot be extended.

Here, since plaintiffs failed to give even a hint of the nature of their new claims in their original proofs of claim, the "equities" cannot save their late-filed claims. They are the equivalent of "entirely new" claims that are time-barred.

16

Even if equitable factors are considered, however, they do not weigh in favor of allowing the new claims to relate back.  The plaintiffs do not argue that any of the factors that mattered in *Unroe* - the only Seventh Circuit case in which equitable factors justified relation back  - apply here.   Instead, they argue primarily that their failure to give notice of their new claims should be excused because they did not have enough information before the bar date to make the claims.  These arguments are unpersuasive.

### a.   "New" Evidence

The plaintiffs first argue that "new" and "more fully developed" evidence came to light after the bar date through Wasendorf's sentencing hearing in January 2013 and an adversary complaint filed by the trustee September 2013, *Bodenstein v. Halyard Capital Advisors, LLC, et al.*, 13 AP 01158.  The plaintiffs' own allegations, however, show that Wasendorf's admitted fraud was widely publicized and detailed in court documents months before the bar date.  The complaint alleges that Wasendorf attempted suicide on July 9, 2012 (one day before the petition date), and that he left "two notes and a signed statement in which he admitted to embezzling millions of dollars over a period of nearly 20 years by using falsified bank statements, intercepting balance confirmation forms from regulators, forging a bank officer's signature, and intentionally misreporting information to regulators."  Complaint ¶ 20.  They further allege that, on July 13, 2012, three days after the petition date, Wasendorf was arrested "and charged with numerous crimes, including lying to federal regulators and defrauding customers out of more than $100 million in a 20-year fraud.  The U.S. District Attorney for the Northern District of Iowa filed a criminal complaint against Wasendorf in the United States District Court for the

Northern District of Iowa, Case No. CR 12-2021 (the "Criminal Case"), regarding Wasendorf's fraudulent conduct." Complaint ¶ 21. They also state that, "In September 2012, Wasendorf entered into a voluntary plea agreement in the Criminal Case, whereby Wasendorf pled guilty to four criminal charges, including lying to regulators, embezzlement and mail fraud.   In the plea agreement, Wasendorf admitted to embezzling and misappropriating in excess of $100,000,000 in PFG's customer funds by, among other things, secretly withdrawing money from the Customer Seg Account, a PFG account at U.S. Bank for futures customers, and falsifying account statements." Complaint ¶ 22.

Thus, plaintiffs' own allegations reveal that a significant amount of information about Wasendorf's fraud was widely available to the public in July through September 2012, several months before the bar date in December 2012. The court can take judicial notice of the high level of reporting in the news media of these sensational events starting in July 2012. *See Specht v. Google Inc.*, 758 F. Supp. 2d 570, 586 (N.D. Ill. 2010) ("The Court takes judicial notice of the existence of these newspaper articles, not of the facts contained therein."), *aff'd* 747 F.3d 929 (7th Cir. 2014); *see, e.g.,* Jacob Bunge, Scott Patterson and Julie Steinberg, *Peregrine CEO's Dramatic Confession*, The Wall Street Journal, July 16, 2012; Peter Lattman, *Futures Executive Is Arrested After Admitting Fraud,* N.Y. Times, July 13, 2012; D.M. Levine, *Russell Wasendorf Sr., Peregrine CEO, Shaped Company And Town In His Image,* Huffington Post, July 11, 2012; Becky Yerak, *Lawsuit Alleges $200 Million Shortfall In Customer Accounts At Peregrine Financial And Says CEO Of Iowa-Based Firm Attempted Suicide,* Chicago Tribune, July 10, 2012.   Thus, the allegations in the complaint and the broad news coverage of Wasendorf's attempted suicide, detailed confession, the criminal complaint against him, and his plea

18

agreement all contradict the plaintiffs' suggestion that the facts regarding Wasendorf's fraud were not sufficiently known before the bar date for them to timely file claims based on them.

Tellingly, the plaintiffs fail to identify a single fact that is essential to their claims that was not widely known before the bar date. They never explain why the admissions made through the guilty plea in September 2012 were not sufficient, or identify any specific information that was not available before the bar date that is material to their claims. They also never explain why it took them from January 2013 until December 2014, almost two years after the sentencing, to assert these claims. Wasendorf admitted his crimes before the bankruptcy case was filed and then pled guilty to federal criminal charges three months before the bar date. These admissions were sufficient for plaintiffs to determine whether they should bring claims against Peregrine based on his fraud and embezzlement.

### b.      Constructive Trust Decision

Plaintiffs next argue that the law regarding constructive trust changed after the bar date, justifying their failure to allege any facts supporting their new claims in their proofs of claim. The Seventh Circuit issued an opinion in March 2014 in *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299 (7th Cir. 2014), holding that the remedy of a constructive trust could potentially be imposed, albeit "sparingly," in a bankruptcy case. This conclusion is contrary to earlier decisions of the Sixth Circuit and many lower courts (including a decision by this court in the *Secure Leverage Group, Inc. v. Bodenstein*, adversary proceeding, No. 12 A 01572, which the court reconsidered after the *Mississippi Valley* decision). *See In re Omegas Group, Inc.*, 16 F.3d 1433, 1451 (6th Cir. 1994). Plaintiffs argue that *Mississippi Valley* changed the law in a way that

somehow excuses their failure to allege the claims raised in the complaint in their original proofs of claim.

This argument fails for at least two reasons. First, there was no binding precedent in this circuit on this issue before the *Mississippi Valley* decision, so nothing prevented the plaintiffs from seeking a constructive trust as a potential remedy before it was issued. In fact, plaintiffs' counsel represented other forex and OTC metals customers - the plaintiffs in the *Secure Leverage* adversary proceeding (not the plaintiffs in this case), and they sought imposition of a constructive trust in October 2012 in their adversary complaint and in a motion filed in the bankruptcy case. *See Secure Leverage Group Inc., et al. v. Bodenstein*, 12 A 01572, Complaint, Count III (Docket no. 1, filed Oct. 15, 2012); Forex/Metals Claimants Group's Memorandum in Support of Its Amended Motion for Surrender of Non-estate Properties or Reclassification of Forex and Metals Customer Claims (Peregrine Docket no. 224, filed Oct. 6, 2012).

Second, contrary to the plaintiffs' suggestion, *Mississippi Valley* did not make a new *claim* available to plaintiffs; it merely recognized the possibility that the *remedy* of a constructive trust may be available in a bankruptcy case in very limited circumstances. To seek any remedy in late-filed claims, however, plaintiffs must first have filed timely proofs of claim that alleged the essential facts supporting the claims. Since they alleged no facts whatsoever in their timely claims, it is impossible for them to amend to seek an additional remedy based on previously alleged facts. Instead, they seek to add entirely new claims based on completely new facts and new legal theories. It is too late for that.

Finally, in weighing the equities of the proposed amendment seeking a constructive trust, it is important to understand the context of this case, which is far different from the livestock

bailment scenario presented in *Mississippi Valley*.  A commodities broker liquidation occurs at

the complex intersection of bankruptcy law and the highly regulated world of commodities

trading.  Congress created a specific statutory scheme for distributing property in a commodity

broker liquidation, incorporating elements of federal commodities law into §§ 771-776 of the

Bankruptcy Code.  As explained in *Secure Leverage Group, Inc. v. Bodenstein*, 510 B.R. 190,

199-205 (Bankr. N.D. Ill. 2014), under federal commodities law, funds transferred by customers

trading commodity contracts to a Futures Commission Merchant ("FCM") like Peregrine remain

the property of the customer and must be kept in segregated accounts.  Congress also gave

customers trading commodity contracts top priority in a commodity broker liquidation, requiring

that those customer funds be returned to the customers as soon as possible at the beginning of the

bankruptcy case.  11 U.S.C. § 766(c).  In stark contrast, funds transferred by customers trading

forex and OTC metals to an FCM have no such protections under commodities laws and are

given no special priority in distributions in a commodity broker bankruptcy.  Funds transferred

by forex and OTC metals customers to an FCM can become property of the FCM, as they did

under the Peregrine customer agreement, and these customers are treated as general unsecured

creditors under the Bankruptcy Code  *See Secure Leverage Group, Inc. v. Bodenstein*, 2014 WL

2197945 (Bankr. N.D. Ill. 2014).  They can be paid only after commodities customers and higher

priority claims are paid in full.

The apparent goal of the plaintiffs in seeking the remedy of a constructive trust is to

disrupt Congress' distribution scheme by preventing the trustee from paying the high-priority

commodities customers from general funds owned by Peregrine, including those transferred by

the forex and OTC metals customers to Peregrine, on the grounds that Peregrine held them in

21

constructive trust for the plaintiffs and the class they seek to represent.  As the Seventh Circuit

noted in *Mississippi Valley*, however, while imposition of a constructive trust is not prohibited in

bankruptcy, courts must use this "extraordinary" remedy "sparingly" to insure that it does not

"subvert bankruptcy's distribution scheme."  745 F.3d at 305.  The plaintiffs seek to do just that -

to impose a constructive trust under state law to defeat the statutory trust created under federal

commodities law and the high priority for distribution given by Congress to commodities

customers under the Bankruptcy Code.  It is therefore highly unlikely that a constructive trust

would be imposed in the circumstances of this case even if the plaintiffs' new claims were

timely.   But more to the point for this motion, the equities do not favor allowing the plaintiffs to

seek a constructive trust two years after the bar date in an obvious attempt to subvert Congress'

distribution scheme in a commodity broker liquidation.

### c.    Other Factors

Plaintiffs further argue that no one is prejudiced by their two-year delay because "the

claims process has not commenced, the funds at issue are intact, and no distribution motion has

been filed with the court."  None of these assertions is correct.

The "claims process" has been under way for two and a half years.  The court set the bar

date of December 2012 and a large number of customers and other creditors filed claims.  The

trustee has filed 22 omnibus objections to claims thus far, in which he has objected to a large

number of claims.  The court has already ruled on most of those objections.  The trustee has also

filed and the court has granted several motions permitting significant distributions of customer

property to customers who traded commodity contracts in compliance with §766(c) of the Code.

Although it is unclear what the plaintiffs mean when they say "the funds are intact," many commodities customers have thus far been paid only 44% of their claims for the return of customer funds held in trust for them by Peregrine.  *See* Peregrine Docket no. 3237.  Allowing the plaintiffs to proceed with their late claims on behalf of themselves and a class of all forex and OTC metals customers would cause significant prejudice to all the commodities customers, who are entitled to full payment before any other customers or general unsecured creditors can be paid anything.  Thus, plaintiffs seek to accord to themselves the same high-priority status that Congress chose to give only to customers trading commodity contracts, to the great prejudice of those customers.

Finally, the court notes the obvious:  the claims alleged in the complaint are not held exclusively by these plaintiffs or the class they seek to represent - forex and OTC metals customers.  None of Wasendorf's bad acts were aimed at forex or OTC metals customers in particular, and his actions did not affect forex and OTC metals customers any more, or any differently, than they damaged every customer of Peregrine.  His actions caused the insolvency of Peregrine, which resulted in its bankruptcy filing, which invoked the distribution scheme created by Congress for commodity brokers.  Thus, to the extent the claims in the complaint are valid, every customer of Peregrine, not just forex and OTC customers, could assert the same claims and would be entitled to the same relief sought by plaintiffs.  There is no reason to allow these forex plaintiffs to assert new claims two years after the bar date to the prejudice of every other customer, including the many customers entitled to much higher priority of distribution than the plaintiffs.  Instead, the equities weigh strongly against the plaintiffs' belated attempt to find a basis for defeating Congress' distribution scheme for commodity broker liquidations.

23

V.      **Conclusion**

The plaintiffs have chosen the improper procedure of filing an adversary proceeding two years after the claims bar date to assert facts and legal theories that should have been alleged in their original proofs of claim.  The allegations of the complaint and matters of which the court can take judicial notice establish that all of the claims in the complaint are time barred and must be dismissed.   The court therefore need not address any other issue raised in the trustee's motion to dismiss.  The trustee's motion is granted.

Dated: May 13, 2015                            ENTERED:

                                               _____
                                               Carol A. Doyle
                                               United States Bankruptcy Judge

24